First case, U.S. v. John Hamilton. I wanted to introduce and thank the gentleman to my left, a very distinguished judge who's helping us out from Massachusetts. It's only my second sitting with him. Hopefully there'll be many more. Always a pleasure to sit with him. His intellect and experience are always a great deal of help to us, and he keeps coming back, which I don't quite understand. I didn't say anything about his judgment. I just talked about his intellectual experience. But we thank you again for it. Thank you very much indeed. First matter, U.S. v. Hamilton. Good morning.  My name is Michael O'Donnell. I'm with the law firm of Marco Whisker Bell. I represent Appellant John Hamilton, and I'd like to reserve three minutes for rebuttal if I can, please. Just briefly discuss the key facts in this case. Well, we really know the facts. Okay. Then I'd like to focus on two issues, specifically the issue regarding the conflict of Mr. Hamilton's trial counsel. And the second issue would be the misrepresentation or confusion of the government with regard to the $5,000 threshold under... But as to the second issue, the court ended up giving an instruction, which I don't know if you were trial counsel or not, but it was the defense requested instruction to try to clear it. There was probably some confusion. The court admitted it. The court gave a curative instruction, which was defense counsel's own proffered instruction. It clearly wasn't objected to. So to the extent that you're now arguing that the instruction that you asked the court to give was a problem, why isn't that tantamount to an invited error? Well, Your Honor, I was not trial counsel, and the jury instruction was provided by defense counsel. So you would concede that invited error is an issue here? It definitely is an issue, Your Honor. But as far as the fairness of the trial goes as a whole, the jury throughout the trial was led to believe that the standard for the $5,000 was to look at the amount of the bribe, not at the amount of the contract going to the payer in this case. Throughout the trial, what was said throughout the trial? Wouldn't the jury take their reading of the law from the judge's charge, which is the charge, again, that you proffered, you, your client proffered? Absolutely. In the opening statement and the closing statement, both of those statements by the prosecution directed the jury to look at the amount of the bribe, not at the, again, at the amount of the potential contract coming from the government entity. You're not suggesting the jury should ignore the amount of the bribe, right? I am not suggesting that, Your Honor. One of the factors they can take into consideration. Exactly. And to be honest, the first time I read that statute, Section 666, I read it about five times, and I was still confused as to exactly what it meant. So no offense meant to trial counsel at all or to the court, but it's a confusing statute. Are you really arguing invited error or ineffective assistance of counsel? Both, I think, Your Honor. I agree that we're moving into the ineffective assistance of counsel. Well, if you are indeed arguing ineffectiveness here on a direct appeal, don't you have some real significant problems in asking this panel to address ineffectiveness? There's no question, Your Honor. I mean, at least at this stage. At this stage, there's no question, Judge. I acknowledge that. May I return you to the other issue you indicated you intended to concentrate on, and that is the conflict issue? Yes. Was there any evidence presented in this case suggesting that the lawyers who worked on Hamilton's case back at the time of the trials actually knew that the Gibbons firm represented Asbury Partners or were in any way affected by the alleged conflict? Right now, there's no evidence before the Court that that was the case. Trial counsel in a post-trial hearing indicated that. How is there an actual conflict? I was going to ask that same question. How is there? Well, that's clearly an issue, and our position is that we did not have an opportunity, an adequate opportunity. Well, I know it's an issue, but how is there a conflict, an actual conflict, in the absence of any such evidence? In fact, the evidence is the contrary, because Baldessari said that he wasn't involved. I agree, Your Honor. There were other attorneys who worked on the case, specifically Mr. Lutsberg. Mr. Lutsberg and Mr. Baldessari actually called Mr. Hamilton, and I think as you can see from my papers to discuss, they had taken him through the process of preparing him to testify on his own behalf. And the day before the trial, they called him and said, or before his testimony was supposed to be taken, said, we think he should not testify. And Mr. Hamilton believes his testimony would have been key in this case. Right. You have to show an actual conflict. Yes. And then a plausible alternative strategy. So I understand the plausible alternative strategy, which is have the defendant testify, but are you really asking that the case be remanded to reopen the issue of whether, because I don't see how you get past the first hurdle on this. Well, I think that we didn't have an opportunity to provide evidence of an actual conflict. I requested an evidentiary hearing at the district court level, and the district court actually appointed an attorney to investigate the issue of the conflict. I requested a copy of that report or the results of that investigation, and that was denied. At this point, I don't think Mr. Hamilton has had an opportunity to look into those issues regarding the conflict, and that's why I think an evidentiary hearing is necessary so we can obtain some discovery and determine whether there is. We review that denial subject to an abuse of discretion standard, right? So what do you have to proffer to the district court in search of the evidentiary hearing that you now argue you should have been granted? Don't you have to offer something other than simply we'd like an evidentiary hearing? We'd like to conduct some kind of investigation. I agree. I think we do, and I think that issue is. What did you present? What did you present from which we could determine that the district court abused its discretion in denying your request for hearing? What we presented was that the Asbury Park, I'm sorry, Asbury Partners, who was a redeveloper in Asbury Park and who was represented by Gibbons Law Firm, and Mr. Hamilton were at odds. They were adverse parties in themselves for a number of reasons, which I set forth in my papers. What happened in this case that would not have happened in terms of the representation of Mr. Hamilton because of the Asbury Park representation? And also, what are you saying the attorney would have done or should not have done because of the relationship with Asbury Partners? Why does it make any difference? How did it impact the course of the defense? Well, I think it's his testimony. I think his testimony was necessary. Whose testimony? Mr. Hamilton's testimony, and I think that he did not testify. Did he turn off the stand because other people in the firm represented or were represented, or he was at odds with? Well, they couldn't have done that, could they? I didn't think he knew anything about the conflict until post-trial. You mean Mr. Baldessari, the trial counsel, or Mr. Hamilton? Mr. Hamilton. Mr. Hamilton didn't know anything about it until after the trial. Was there any evidence that the attorney knew? I'm sorry, your Honor? Any evidence that the attorney knew? I mean, as I understand the record, he wasn't aware that his firm had a trial counsel. Out there among those 250 lawyers, two who were involved in some capacity with Asbury Partners. I agree. Trial counsel stated on the record that he was not aware, but there were other attorneys who were involved. Well, let me try to get this straight in my own mind. Are you indicating that as of this point there is nothing in the record at trial or post-trial in an application for an evidentiary hearing that Hamilton, at the time of a decision as to whether or not to testify, knew that there was some kind of conflict here with Asbury Partners, and there is nothing in the record that suggests that trial counsel or anyone else with the Gibbons firm knew of such a conflict? Is that the current condition of the record? That is the current position, your Honor. The fact is, though, we don't know who was involved. But it's even worse than this, and you answered that question, and maybe you can keep this in mind when you answer it. Baudissari stated on the record, I can say in no uncertain terms that the corporate department's representation of Asbury Partners did not in any way affect anything that I did in this case. I didn't fight less hard for John because I was worried about a company that I didn't even know we represented. That's the state of the record. And given that, I don't quite see maybe I'm missing something. Again, one of the partners, Mr. Luskberg, was also involved in the decision-making process. It was he and Mr. Baudissari who talked to Mr. Hamilton to convince him not to testify. Asbury Partners is a huge, huge firm. They handled the entire redevelopment for Asbury Park. To think that the people involved, some of the people involved in Mr. Hamilton's case were not aware that their firm was representing this huge client and that Mr. Hamilton was involved in a redevelopment process as a councilperson in Asbury Park, I think that's hard to believe. Well, you say advised him not to testify. Is there anything in the record that says they told him that it was not his decision ultimately to make? There's nothing in the record that says it specifically was not his decision, no. There's nothing in the record that states that. But if you've got two prominent attorneys talking to you about whether or not to testify and advising you not to testify, I think you're going to heed that direction from those attorneys. And that's what Mr. Hamilton did. He trusted his attorneys. Mr. O'Donnell, may I shift you for a moment to another issue? And this is not one you highlighted at the outset. So let me ask if the issue that you raised relative to Section 666 and the lack of formal decision-making authority on the part of Mr. Hamilton, are you abandoning that issue here or were you just setting out a kind of hierarchy of issues of importance? That issue remains on the table.  If it remains on the table, given the language of 666, what from the actual text of that section should suggest to us that there is some kind of actual decision-making authority requirement? Okay. Just so I'm clear, Your Honor, we're talking about the four-level increase on the sentencing or the intent, I think? We're talking about the statutory argument that you've raised relative to his conviction under 666. Did you raise such a? Did you not raise such a? Yes, Your Honor. I think I know what you're referring to, and that is the fact that it would have been impossible for him to influence city council. Right. It's the second issue you raised. It's essentially a legal impossibility. That's right, Your Honor. The areas where the contract was allegedly supposed to be given for demolition work that Mr. Hamilton was supposed to influence were in two areas, redevelopment areas. Right. And I'm asking you what within the text of the statute would suggest such a requisite? Even if he lacked the authority, doesn't the evidence here even show that he did try to use his influence? Isn't that enough under the statute? Well, the statute says intention with an intent to influence, and the issue is if we're focusing on the redevelopment area where he had no authority to influence, I think it goes to his intent that he didn't intend to influence. Or rewarded. Influenced or rewarded in connection with any business transactions. Right. Take a step back from the statute. Don't you have a mistake of law confused with the legal effect of a mistake of fact? Isn't it most we have operating here as a mistake of fact as to whether he could actually have succeeded? I agree it's a mistake of fact, Your Honor. And ordinarily you would agree that's not really a defense. I would agree with that also, Your Honor. And would you agree that he did intend to be rewarded in connection with the business? Right. I think it goes to his intent. Well, if that's the case, then why wouldn't he, regardless of whether or not he could have fulfilled the promise that he purported to be making, if he intended to benefit by making, by entering into this transaction, like he's getting his driveway done, why wouldn't that be enough under 666AB? Well, I think the fact, again, that he was unable to influence in that area goes to his intent. It would indicate that he didn't have the intent. To be rewarded in connection with the business. That's correct, Your Honor. He didn't intend to get the driveway done. We go into a lot of other issues there. He did intend, actually not, at the outset he did not intend to have the driveway done. He tried to put the guy off continuously, if you look at the transcript, throughout, many transcripts. What you're trying to argue is that he didn't intend to exert influence because he secretly knew he didn't have the power to accomplish the end. Isn't that what you're trying to get at? Well, I know that he secretly knew, but basically that's the argument, Your Honor. Okay. I think it saves some time for rebuttal, Mr. O'Donnell. Thank you. Thank you. Good morning, Your Honors. Glenn Moore, Markham, on behalf of the government. I guess I'd like to start with the issue of the conflict that the panel has devoted most of its time to. And I think I'm in agreement with the thrust of most of the questioning that I heard here. Then sometimes attorneys just end up and rest on their briefs when they agree with what they perceive as being the thrust of the questioning. Sometimes they do that. Sometimes they don't. Sometimes judges even suggest things by way of their comments. Your Honor, I'm very happy with that. Sometimes they proceed on for 15 minutes and totally destroy whatever hope they had of winning a case that would have been a slam dunk before they got to the microphone. But that's never happened in this court. No. Before I sit down, I would just like to extend the offer to the panel. If they have any questions about any of the issues, I'm happy to answer them. Otherwise, I'd like to rest on my brief. I don't want to interrupt you. Go ahead. I just have one question. Sure. The report that's alluded to in the record, the investigation, that was done. The record, in fact, does not reflect. But, yes, there was, in fact, a report. And it was reviewed by the court. Yes, it was. So it's not that he asked for an investigation. Yes. Could I just clarify, though, what the record does and doesn't reflect on the earlier report? The only time it's actually ever mentioned is when the order is put in for the report. I don't doubt that counsel asked for it, but there's nothing in the record. There's no denial for this court to review. We don't know why the judge denied an off-the-record request for it. It's just not part of the hearing. There was no request for it during the latter part of the stage. It's really kind of all a mystery. Other than that, I'd like the Chief and Judge Snedeker to give him some very good advice. All right. Thank you. Thank you. Thank you. Now, I guess if you're rebutting something that he said and he's resting on his brief, I guess you've got a few minutes to bring your shotgun out and do a whole shotgun approach. Well, Your Honor, I think if you just look at the facts, just to put it plainly, Mr. Hamilton, at least from Mr. Hamilton's view and from my view and hopefully from this court's view, did not get a fair shake. Imagine, he goes through two trials. How? Are you talking about the conflict now? I am talking about the conflict. That's what I'm focused on. That's what we're trying to figure out is how he didn't get a fair shake when the attorney said, look, it didn't influence me. I didn't even know about it. And I'm wrestling with how that impacted something that the attorney would have done or something the attorney did do that he would not have done had this Asbury Park connection not been there. And, again, there were other attorneys involved. Haier wrote the hierarchy. I gave him his law firm who were also making these decisions. Again, Mr. Lussberg. All right. But I understood Chief Judge McTee's question to be, and it's certainly my question if it's not his, what would have been done differently but for not realizing the existence of a conflict, which you contend existed here? Even up to this moment, I'm not understanding what it was the defense would have done differently. Pretend you're in the trial court right now. Pretend we're a trial judge. What's your profit that you're going to make to us of the evidence you want to present? Mr. Hamilton's testimony that, to clarify, the testimony of Robert Steffer with regard to the driveway, that he intended to pay for that driveway, that he didn't have any intent to influence contracts or influence counsel. What's that have to do with Asbury Partners? Well, because his testimony would have – Asbury Partners would certainly have been mentioned at least. He's saying we'd have gotten on the witness stand and, boy, you know, given those tapes, if he had gotten on the witness stand, my gosh, the prosecutor would have just been two steps short of orgasmic to get a shot at cross-examining him, given those tape examinations. Let me try to help. You're trying to cast it as a fair trial issue. You've given me a list of a dozen sins that the prosecution committed at the trial. In that hierarchy, which should I focus on if I'm really interested in this fair trial issue? What was the worst thing that the prosecutor did? I think they were – I would say the vouching, which I said for those instances. Explain that. I'm sorry. You mean you said the voucher? I'm sorry, the vouching, Your Honor, by the prosecutor. Oh, I see. Okay. And also the continuous statements by the main witness, the FBI informant Robert Steffer, the key one being, you know, he's in prison now. I'm referring to the city manager in Asbury Park. That's where I would focus the court's attention on the fair trial issue. Thank you very much. Thank you, Your Honor. We'll take a minute on the advisement.